

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John O. Harris
Assistant County Attorney
Coleman County
Coleman, Texas

Dear Sir:

Opinion No. O-6491
Re: Whether an official court
reporter in Texas can
legally qualify and act
as city attorney at one
and the same time.

We have your request for opinion on the question
"of whether or not an official court reporter in Texas, can
legally qualify and act as City Attorney under appointment
by the City Commissioner; not by election."

Any inhibition against the holding of both of these
positions must be found within the Constitution of the State
of Texas. Article XVI, Section 40, provides:

"No person shall hold or exercise at the same
time, more than one civil office of emolument.
. . ."

Various exceptions not here material are provided
for in this section.

It has been held that a city attorney is holding a
"civil office" or "public office." Sullivan v. Taylor, 279
N. Y. 364, 8 N. E. (2d) 531; Juliani v. Darrow, 58 Ariz. 296,
119 P. (2d) 565; People v. Rapsey, 16 Cal. (2d) 636, 107 P.
(2d) 388. The question, therefore, is whether or not an of-
ficial court reporter holds such an office.

Official court reporters are provided for by Arti-
cles 2321, et seq., R. C. S., 1925. Article 2321 provides:

"Each district and criminal district judge
shall appoint an official court reporter who shall
be a sworn officer of the court and shall hold his
office during the pleasure of the court. . . ."

Honorable John O. Harris, page 2

Article 2322 provides for the reporter's taking an oath "that he will well and truly in an impartial manner keep a correct record of all evidence offered in each case reported by him." Article 2324 makes it the duty of the reporter to attend all sessions of the court; to take full shorthand notes of all oral testimony offered in every case tried in said court, together with all objections to the admissibility of the evidence, the rulings and remarks of the court, and all exceptions; to preserve all shorthand notes taken; to furnish any person a transcript upon the payment of fees provided by law. The ensuing articles provide for the reporter's compensation and expense.

Perhaps the most exhaustive and comprehensive review of the authorities on the question of civil offices appears in State of Montana ex rel. Julius Barney v. R. N. Hawkins, 257 Pac. 411, 53 A. L. R. 583. We quote therefrom as follows:

"There are a great many judicial decisions defining the word 'office' or the words 'public office.' The subject is an old one, and the decisions extend far back. Some of the decisions stress one test; others some other. However, in nearly all are found certain common features that stand out prominently. To quote from all examined would extend this opinion much beyond reasonable length. However, we shall quote here from some decisions and definitions which illustrate, to some extent, the various essentials of public office, emphasized by the courts and other authorities, and which state some of the things that have been held requisite.

"'An office is defined by good authority as involving a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public, by which it is distinguished from employment.' State ex rel. Barnhill v. Thompson, 122 N.C. 439, 29 S. E. 720.

"'. . ..

Honorable John O. Harris, page 3

"'Where . . . the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer,' Richie v. Philadelphia, 225 Pa. 511, 26 L.R.A. (N. S.) 289, 74 Atl. 430.

"'His duties must not be merely clerical, or those only of an agent or servant, but must be performed in the execution or administration of the law, in the exercise of power and authority bestowed by the law.' Atty. Gen. v. Tillinghast, 203 Mass. 539, 543, 89 N.E. 1060, 17 Ann. Cas. 449.

". . . .

"The most general distinction of a public office is, that it embraces the performance by the incumbent of a public function delegated to him as a part of the sovereignty of the state.' State ex rel. Atty. Gen. v. Jennings, 57 Ohio St. 415, 63 Am. St. Rep. 723, 49 N. E. 404.

"'Every office under the Constitution implies an authority to exercise some portion of the sovereign power of the state, either in making, executing or administering the law.' Olmstead v. New York, 10 Jones & S. 481.

". . . .

"Practically all of the authorities, however, hold that to an officer are granted some of the sovereign powers of the government, to be exercised for the benefit of the public. They hold, also, quite generally that an officer's duties must be prescribed by law, and that he must be independent in the exercise of them, and not subject to orders from a superior as to the nature or discharge of his duties, with the exception of some assistants, such as Assistant Attorneys General, . . . and the like. . . .

Honorable John O. Harris, page 4

"'The term "office" implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office. . . . This definition carries with it ex vi termini the further idea that the power delegated must be exercised by the person in his own right and not in another's right.' State ex. rel. Brown v. Christmas, 126 Miss. 358, 88 So. 881." (Emphasis ours)

The case of Robertson v. Ellis County, 84 S. W. 1097, arose under Acts of 1903, p. 84. That Act is in all material respects parallel to the provisions of the present statutes, noted above. However, the 1903 Act used the term "official stenographer" instead of "official reporter." The Act provided for their appointment by the judges of the district courts, and declared that they should be "sworn officers of the court," and should hold their office during the pleasure of the court. The duties required of such official stenographer were the same as those presently required of an official reporter.

Robertson performed services and sued the county to recover a balance alleged to be due him therefor. The county defended on the ground that the Act of 1903 was violative of Section 30 of Article XVI of the Constitution, which provides "that the duration of all offices not fixed by this Constitution shall never exceed two years." Inasmuch as the court's language is most illuminating, we will quote from it more or less at length.

". . . The definition of the term 'office,' as given by Mr. Mechem in his work on Public Officers, is quoted with approval by our Supreme Court in the case of Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120, and is as follows: 'A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' . . . Does the act confer upon the stenographer any sovereign function of government? We think not. There is quite a material difference between a public office and a public employment. As said by Chief Justice Marshall, 'Although an

Honorable John O. Harris, page 5

office is an employment, it does not follow that
every employment is an office.' Mr. Mechem, in
his work on Public Officers, says: 'The most im-
portant characteristic which distinguishes an of-
fice from an employment or contract is that the
creation and conferring of an office involves a
delegation to the individual of some of the sover-
eign functions of government, to be exercised by
him for the benefit of the public; that some por-
tion of the sovereignty of the country, either leg-
islative, executive, or judicial, attaches for the
time being, to be exercised for the public benefit.
Unless the powers conferred are of this nature, the
individual is not a public officer.' Now, while
the fact that the position of stenographer is
designated in the act providing for its creation
as an office, and that it declares that the person
who may be called to perform its duties 'shall be
a sworn officer of the court,' affords some reason
for determining it to be such, still it is believed
the place possesses none of those sovereign func-
tions of the judicial department of the govern-
ment to which it relates, to distinguish it from
a mere employment to perform a special service,
under public authority, for the assistance and con-
venience of the court and parties litigant there-
in, in which no judicial discretion or judgment is
involved. The creation of the position, as shown
by the very terms of the act, was designed for no
other purpose than to provide some one by whom the
oral evidence offered, and other proceedings in-
volving objections made to admissibility of testi-
mony, the ruling of the court, and exceptions
thereto, might be taken in shorthand, as a method
of preserving those matters as they occurred, with-
out delaying trials, to be afterwards transcribed
and furnished the court and parties to the suit,
to aid them in an accurate and prompt preparation
of the record. The report or transcript of the
proceedings by the stenographer is not binding,
however, upon the court, and may be adopted or re-
jected at his discretion. No act which he is au-
thorized to do is independent of the control of
others, or vested in him as a supreme power to be
exercised as a right or prerogative of a judicial
office. We conclude that while the position of a

Honorable John O. Harris, page 6

stenographer, under the statute in this state, may be, in a sense, an office, and the term thereof may continue for a longer period than two years, yet there is no such sovereign function of government embraced in the powers conferred upon the individual performing its duties as brings it within the meaning of the word 'office' as used in the section of the Constitution quoted."

It is difficult to perceive how a reporter, by virtue of his not being vested with any sovereign functions, could fail to be an officer within the meaning of Section 30 and at the same time be an officer within the meaning of Section 40. The same qualities make a person an officer under both. The sole additional element specified in Section 40 is that the office be one of emolument.

We are not unmindful of cases like Otto v. Wren, 185 S. W. 350, and Dunn v. Allen, 63 S. W. (2d) 857, wherein the courts have issued writs of mandamus to compel reporters to prepare statements of fact in cases where the party requesting same has filed a pauper's oath. In the limited sense only that is necessary to support a writ of mandamus a reporter may be considered an officer. However, it is axiomatic that mandamus lies to enforce the performance of a non-discretionary act or duty; that the writ will issue only when the act or duty is ministerial in character, and not when the act in any measure involves the exercise of discretion or judgment. 28 Tex. Jur. 537, Sec. 13. The act commanded to be done is not one which would constitute the holder thereof an officer in the sense used in Section 40 of the Constitution under the authorities above referred to.

You are advised, therefore, that there is no constitutional inhibition against an official court reporter's qualifying as city attorney under an appointment by the city commissioner.

We believe that this fully answers your inquiry.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Arthur L. Moller_
Arthur L. Moller
Assistant

APPROVED JUL 19 1945

FIRST ASSISTANT
ATTORNEY GENERAL

ALM:db